## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GABRIEL MIRABAL,

      Petitioner

vs.                                                                      CIV 18-1024 WJ/KBM

UNITED STATES,

      Respondent.

## PRELIMINARY PROPOSED FINDINGS AND
## ORDER APPOINTING COUNSEL ON LIMITED ISSUE

THIS MATTER comes before the Court on the *pro se* Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, filed by Gabriel Mirabal ("Mirabal") on April 8, 2020 *(Doc. 20)*.[1] In addition to his § 2255 Motion, Mirabal has filed numerous other related motions, including: (1) a motion to appoint new counsel *(Doc. 21)* filed on May 8, 2020, (2) a motion for discovery *(Doc. 40)*, filed on March 5, 2021, (3) a motion for an evidentiary hearing *(Doc. 42)*, filed on March 5, 2021, (4) a combined motion for discovery and hearing *(Doc. 51)*, filed on June 21, 2021, (5) a second motion for an evidentiary hearing, filed on March 24, 2022 *(Doc. 62)*; and (6) a motion challenging conspiracy and sentence

---

[1] On November 2, 2018, Mirabal filed his first Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. *Doc. 1*. On February 28, 2019, Mirabal attempted to supplement that initial petition with an amended motion to vacate. *Doc. 14*. On March 24, 2020, the Court dismissed Mirabal's claims as improperly submitted and gave Mirabal leave to file another petition provided that he file a "single amended § 2255 motion on the proper form, which raises all grounds for habeas relief." *Doc. 19*. Thus, the Court now addresses the issues raised in the timely-filed Amended 2255 Motion to Vacate *(Doc. 20)*.

and charging disparities, filed April 7, 2022 (*Doc. 63*)[2] The Honorable William "Chip" Johnson referred this matter to me on September 8, 2020, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 30.*

After considering the parties' submissions, the relevant law, and the record in this case, the Court will recommend that all but one of the claims raised in Mirabal's § 2255 motion be denied. The Court will appoint counsel for further briefing and potential argument on the purely legal issue of whether Mirabal's prior felony conviction for aggravated battery with a deadly weapon in violation of NMSA § 30-2-5(C) qualifies as a crime of violence which is required to support his conviction on Count 6 – felon in possession on body armor. At this point, the Court finds an evidentiary hearing unnecessary because Mirabal's Motion and the record of the case conclusively establish that Mirabal is entitled to no relief on all other claims. *See* 28 U.S.C. § 2255(b) (a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). The Court will also recommend that Mirabal's motion for evidentiary hearings and discovery requests be denied.

## I.  FACTUAL BACKGROUND

In March 2012, the Drug Enforcement Agency (DEA) began an investigation of Mirabal and other individuals for engaging in a narcotics conspiracy to traffic cocaine hydrochloride (powder cocaine) and cocaine base. CR Doc. 197 at 1, 6. Because

---

[2] The Court will refer to all documents docketed in the civil § 2255 case as "*Doc.*" with the appropriate number. The Court will refer to all documents in Mirabal's underlying criminal case, CR 13-1152 WJ/LF, as "CR Doc." with the listed docket number.

Mirabal appeared to be the leader of this group, DEA referred to the conspirators as the Mirabal Drug Trafficking Organization ("Mirabal DTO"). *Id*. at 1. From March to May 2012, DEA agents advanced their investigation with various methods, "including but not limited to visual surveillance, use of at least one confidential informant [CS-1] and controlled purchases of crack cocaine, attempted trash collection and attempted introduction of an undercover agent." *Id*. at 6.

On May 30, 2012, DEA Special Agent (SA) Christopher Scott Godier submitted to the Honorable James A. Parker, Senior United States District Judge, lengthy affidavits in support of applications for orders authorizing the agents to intercept wire and electronic communications of Mirabal and other then-unknown subjects. CR Docs. 100-1–100-6. The Affidavits cited, in part, information gleaned from CS-1, who had identified Mirabal as a cocaine supplier. The Affidavits did not include the entire criminal history of the CS-1, omitting convictions for fraud and identity theft. Judge Parker approved the wiretap warrant. CR Docs. 100-3 at 13; 100-6 at 15.

After obtaining the wiretap authorizations, DEA agents conducted wire and electronic interception of Mirabal's telephone, and they recorded transactions between Mirabal and others. Although the intercepted conversations never explicitly referenced narcotics, the conversations used "coded words" that the DEA agents recognized as referring to drug trafficking.

DEA agents established visual surveillance of Mirabal at his residence. On February 14, 2013, the agents witnessed Mirabal putting what appeared to be a soft grey gun case and a package of drugs into a red Infinity automobile that was parked at his residence. CR Doc. 197 at 32. Later, near Unser Road in Albuquerque, Deputy

Micah Barker met with DEA agents investigating the DTO. Deputy Barker was asked to assist in conducting a traffic stop on a suspected drug trafficker in the red Infinity that was thought to contain an assault weapon.

Deputy Barker then stopped Mirabal for speeding while he was driving the red Infinity. After a vehicle information inquiry indicated that the red Infinity did not belong to Mirabal, Deputy Barker searched the vehicle without Mirabal's consent. During the search, Deputy Mirabal discovered a knife and a 12" x 6" x 3" package that contained 1,126.4 gross grams of cocaine. CR Doc. 197 at 32.

On April 24, 2013, DEA agents executed two separate search warrants – one for Mirabal's residence and the other for a storage unit rented by Mirabal. CR Doc. 244 at 2. At the residence, among other things, the agents found:

1.  A Ruger SR40C .40 caliber pistol on the nightstand in the master bedroom;
2.  A Ruger magazine with seven .40 caliber rounds;
3.  Thirteen boxes of .223 ammunition in a linen closet;
4.  A scale in its box in the laundry room;
5.  Shrink wrap in a kitchen drawer;
6.  A scale in a kitchen cabinet bottom drawer;
7.  21.6 grams of suspected crack cocaine contained inside a hidden false bottom of a Monster energy drink in the refrigerator;
8.  935.5 grams of suspected marijuana contained inside a glass jar in the bottom left kitchen cabinet;
9.  610.8 grams of suspected marijuana contained inside a glass jar in the bottom left kitchen cabinet.

Inside the storage unit, DEA agents found a bulletproof vest inside a plastic container. CR Doc. 244 at 2.

4

## II. PROCEDURAL BACKGROUND

### A. Original Charges

On April 9, 2013, a federal grand jury returned a five-count Indictment against Defendant Gabriel Mirabal and four co-defendants.[3] CR Doc. 1. Mirabal was charged with two crimes in this Indictment: Conspiracy to Distribute 28 Grams and More of a Mixture and Substance Containing a Detectable Amount of Cocaine Base in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), and Possession with Intent to Distribute 500 Grams and More of Cocaine Hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Shortly thereafter, Mirabal was arrested, and Assistant Federal Public Defender ("AFPD") Devon Fooks was appointed to represent him. CR Doc. 12. Presiding District Judge Johnson declared the criminal case complex on August 19, 2013. CR Doc. 73.

Thereafter, extensive motion practice ensued. The first round began on January 22, 2014, when AFPD Fooks filed a motion for discovery (CR Doc. 79) on all relevant material information in the possession of the government. He then filed two more motions on April 4, 2014. The first (CR Doc. 99) asked the Court to compel the government to disclose the identity of the two confidential informants about which defense counsel had learned through discovery. The second (CR Doc. 100) asked that the Court suppress the fruits of the Title III wiretaps. Three days later, on April 7, 2014, AFPD Fooks filed a motion to suppress all evidence obtained on February 14, 2013 (CR Doc.102).

---

[3] Mirabal's co-defendants were Dominic Anaya, Michael Jaramillo, Sam Elyicio, Jr., and Robert Romero *(Doc. 1)*.

A second round began when AFPD Fooks followed up with two more suppression motions: a motion in limine to suppress statements made by co-defendant Michael Jaramillo (CR Doc. 133, filed July 1, 2014), and a motion to suppress all evidence resulting from the search of the storage unit *(*CR Doc.188, filed December 12, 2014).

### B. Superseding Indictment

On September 9, 2014, the Grand Jury filed a six-count Superseding Indictment, but this time the charges were solely against Mirabal.[4] CR Doc. 160. The charges included: Count 1, Conspiracy to Distribute 280 grams and more of a substance containing cocaine base; Count 2, Possession with Intent to Distribute 500 grams and more of a substance containing cocaine and aiding and abetting on February 14, 2013; Count 3, Possession with Intent to Distribute a substance containing cocaine and aiding and abetting on April 24, 2013; Count 4, Possessing a Firearm During and in Relation to and in Furtherance of a Drug Trafficking Crime; Count 5, Felon in Possession of a Firearm; and Count 6, Possession of Body Armor by Felon Previously Convicted of a Crime of Violence. *Id.*

Following an evidentiary hearing held on December 16, 2014, the Court entered a Memorandum Opinion and Order denying the discovery and suppression motions filed on April 4 and April 7, 2014. CR Docs. 195; 197. Less than three weeks later, on January 12, 2015, Mirabal filed a motion seeking new counsel, alleging that AFPD Fooks was

---

[4] The four co-defendants all pled guilty to charges set forth in the original Indictment. Three of them pled guilty pursuant to Rule 11(c)(1)(C) *binding* plea agreements to agreed terms of incarceration – Elyicio to 125 months, Romero to 120 months, and Jaramillo to 78 months. The remaining co-defendant, Dominic Anaya, pled guilty to the Count I conspiracy charge pursuant to an agreement with non-binding stipulations in hopes of a possible government-recommended reduction in sentence in exchange for cooperation.

ineffective and had failed to investigate his claims. CR Doc. 198. After a February 25, 2015 hearing that included ex parte discussions with AFPD Fooks and Mirabal, Chief Judge Johnson appointed new counsel, Ryan J. Villa, to represent Mirabal. *See* CR Docs. 208; 210; 211.

### C. Pretrial Motions and Jury Trial

On May 20, 2015, Chief Judge Johnson denied as moot Mirabal's motion to suppress and his motion in limine regarding statements by Michael Jaramillo because the government did not intend to call Mr. Jaramillo as a witness at trial. CR Doc. 226. The next day, he entered a Memorandum Order and Opinion denying the motion to suppress the evidence seized from the storage unit. CR Doc. 224.

On November 9, 2015, Mr. Villa filed a renewed motion to suppress the Title III wiretap interceptions. CR Doc. 263. That same day, the government filed a document setting forth four stipulations which the government and Mirabal had agreed would be presented at trial regarding the drug evidence. All four stipulations confirmed the content, weight and purity of the seized drugs as tested at government labs. CR Doc. 265-1 at 1-2. Shortly thereafter, Mr. Villa filed a "Notice of Agreement in Limine" that the government would not introduce a series of statements or evidence resulting from wiretaps placed on the phones of two men involved in separate cases. CR Doc. 268. Prior to trial, Chief Judge Johnson once again denied the renewed motion to suppress evidence from wiretaps. CR Doc. 299.

Trial began on December 7, 2015. One week later, a jury found Mirabal not guilty on Counts 3 and 4 of the Superseding Indictment but convicted him on Counts 1, 2, 5, and 6. CR Doc. 333; 336. Prior to trial, the Court determined that, as a matter of law for

the Court rather than an issue for the jury, Mirabal's prior New Mexico state conviction for aggravated battery with a deadly weapon was a crime of violence as defined by 18 U.S.C. § 16. CR Doc. 331. Therefore, this prior felony conviction was deemed sufficient to serve as the predicate felony conviction required to support the conviction for possession of body armor in Count 6.

### D. Sentencing

The United State Probation Office's presentence investigation report (PSR) found that based on drug quantity alone, Mirabal had an offense level of 38 as calculated under the United States Sentencing Guidelines. But two enhancements applied: a two-point enhancement for possession of a firearm in furtherance of a drug trafficking offense, and a second two-point enhancement for being the leader or organizer of a drug trafficking conspiracy. The enhancements brought Mirabal's guideline offense level to 42. Alternatively, the PSR found that Mirabal was a career offender based on prior offenses, which also resulted in a guideline offense level of 42. Also, as a career offender, Mirabal's criminal history category rose to the highest level – VI. An offense level of 42 coupled with a criminal history of VI resulted in an advisory guideline range of 360 months to life incarceration. On June 9, 2016, the Court sentenced Mirabal within that applicable guideline range to a term of imprisonment of 432 months, or 36 years. CR Doc. 384; 386.

### E. Tenth Circuit Appeal

On July 29, 2016, Mr. Villa filed a Notice of Appeal on behalf of Mirabal. About one month later, however, Mirabal filed a pro se request for new appointed appellate counsel, and the Tenth Circuit granted Mr. Villa's motion to withdraw and appointed CJA

attorney Mark Baker to represent Mirabal. *See* CR Doc. 398. After Mr. Baker filed his

opening appellate brief, the Tenth Circuit received another pro se request from Mirabal

to appoint new counsel, but this time to replace Mr. Baker. Attached to that request was

a pro se brief raising additional issues not previously briefed. On June 1, 2017, the

Tenth Circuit denied Mirabal's motion for new counsel but directed Mr. Baker to file a

supplemental memorandum addressing the additional arguments made by Mirabal.

      In his appeal to the Tenth Circuit, Mirabal raised "two primary arguments" and

"three supplemental arguments." *United States v. Mirabal*, 876 F.3d 1029, 1032 (10th

Cir. 2017). Mirabal's primary arguments focused on the reasonableness of the search of

the red Infinity, which he contended violated his Fourth Amendment rights and his Sixth

Amendment right to confront witnesses against him. In his supplemental arguments,

Mirabal maintained that: (1) there was insufficient evidence to convict; (2) certain

evidence had been destroyed in bad faith; and (3) the government had wrongfully held

evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

      After holding oral argument, the Tenth Circuit affirmed in a 20-page published

opinion issued November 29, 2017. Subsequently, Mirabal filed a Petition for a Writ of

Certiorari on February 16, 2018, which the United States Supreme Court denied on May

14, 2018. *See* CR Docs. 410; 411.

## III.  LEGAL STANDARD

      For persons convicted of crimes in federal court, the often-called federal habeas

statute provides in pertinent part:

> [a] prisoner in custody under a sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United

> States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Because Mirabal does not contend that the Court was without jurisdiction in his criminal case or that his sentence exceeds the maximum authorized by law, he must demonstrate that his sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

The Court must liberally construe Mirabal's filings because he is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). Thus, the Court will hold his pleadings "to a less stringent standard than formal pleadings drafted by attorneys." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Tenth Circuit has expressly cautioned district courts, however, against "assuming the role of advocate for the pro se litigant." *Hall v Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## IV.  DISCUSSION

Mirabal advances five grounds for relief: (1) violations of his Fourth Amendment rights[5] associated with physical and electronic searches; (2) violations of his Fifth and Sixth Amendment rights for withheld or destroyed evidence; (3) ineffective assistance of counsel; (4) improper finding that a previous conviction was one for a crime of violence; and (5) government presentation of false or misleading testimony. The government

---

[5] Mirabal's assertion of violations of Fourteenth Amendment rights is misplaced. The Fourteenth Amendment applies to claims arising from actions by a *state*; Mirabal's claims are based on *federal* action.

counters that many of Mirabal's claims are procedurally barred, and the remaining claims lack merit. The Court will consider each in turn.

### A. Ground One: Alleged Fourth Amendment Violations

As to physical property, Mirabal contends the search warrants for his electronics, residence and storage locker violated his constitutional rights against unreasonable searches and seizures. As to the interception of communications, he attacks the basis for Title III wiretaps ("wiretap warrant") and the alleged failure to minimize intercepted sessions. Specifically, Mirabal focuses on the affidavit testimony of SA Godier presented in support of the wiretap warrant. Mirabal alleges that SA Godier failed to make full disclosure in his Affidavit about the credibility of CS-1 and the information provided by DEA agents regarding drug transactions observations. On the latter argument, Mirabal delves into the basis for his conviction, contending that there is no proof that he possessed crack cocaine.[6]

Before trial, Chief Judge Johnson held a hearing on Mirabal's motion to suppress. After reviewing all the evidence, the Court found that SA Godier's Affidavit supported probable cause. *See* CR Doc.197 at 30. Mirabal does not challenge the Court's finding here nor did he challenge it on direct appeal. The government contends that Mirabal is now procedurally barred from bringing Fourth Amendment claims in these collateral proceedings. When the government raises a "procedural bar," a court must address it, and, if valid, dispose of the case on that basis. *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

---

[6] Four premises underly this argument: (1) some of the substances seized from his home were not cocaine; (2) no field test reliably tests for crack cocaine; (3) SA Godier never saw the field test for the cocaine; and (4) agents lied about the field test results.

Fourth Amendment claims based on unconstitutional searches and seizures are generally not cognizable in habeas proceedings. *Stone v. Powell*, 428 U.S. 465, 481 (1976). In *Stone*, the Supreme Court explained that the exclusionary rule "'is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id. a*t 486 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). In a collateral proceeding, when a petitioner has had the "opportunity for full and fair litigation of a Fourth Amendment claim," the benefit of the exclusionary rule would be "small in relation to the costs." *Id.* at 493. Therefore, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482; *see also United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993) (extending the *Stone* bar to § 2255 federal movants).

The *Stone* court did not define the parameters of what it means to have a "full and fair opportunity" to litigate a Fourth Amendment claim. The Tenth Circuit pronounced such a test in *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978), which was applied to a § 2255 movant in *United States v. Lee Vang Lor*, 706 F.3d 1252 (10th Cir. 2013):

> An "opportunity" for full and fair consideration requires at least "the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing," and "recognition and at least colorable application of the correct Fourth Amendment constitutional standards." [quoting *Gamble,* 583 F.2d at 1165]. Ineffective assistance of counsel may deny a defendant this opportunity.

*Lee Vang Lor*, 706 F.3d at 1258.

Mirabal neither contends that these issues were not addressed in the district court nor identifies any procedural deficiencies in the Fourth Amendment claims pursued by his counsel in pretrial proceedings. Rather, he simply states that "my counsel filed my direct appeal on issues without my consent and I am ignorant to the law." *Doc. 20* at 4. This claim is not supported by the record.

First, the record reveals that Mirabal has had multiple opportunities to litigate his Fourth Amendment claims. Indeed. two of Mirabal's three trial attorneys submitted motions contending that the Title III wiretap evidence should be suppressed. The Court conducted evidentiary hearings on the suppression motions and entered opinions that thoroughly explored all of Mirabal's arguments. *See* CR Docs. 197; 299.

Nor does the record support Mirabal's argument that the appeal process failed to address issues he sought pursue in his direct appeal. When Mirabal stated that his appellate counsel, Mr. Baker, was not following his direction, the Tenth Circuit permitted Mirabal to supplement his brief, and ordered Mr. Baker to brief those additional issues. Notably, none of the Fourth Amendment claims Mirabal presents here were part of that supplementary briefing.

Finally, Mirabal argues that SA Godier did not follow Title III Guidelines, which require minimizing intercepted sessions. The government contends that this argument is procedurally barred. Although Mirabal did raise this argument in a motion to suppress, he failed to raise it on appeal. To preserve an argument for review in collateral proceedings, a defendant must raise the information both at trial and on direct review. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986). Accordingly, claims stated by Mirabal in Ground One are either without merit or procedurally barred.

**B. Ground Two: *Brady* and *Giglio* Claims**

Mirabal argues that the government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) by destroying seized drugs, by withholding key discovery and information until trial, and by failing to disclose evidence affecting the credibility of a confidential informant. *Doc. 20* at 23. Mirabal asserts that these alleged violations also demonstrate prosecutorial misconduct. The government again raises procedural default as to these claims.

Like the *Stone* bar, the procedural default doctrine is a judicially created rule that restricts the type of claims that may be brought in § 2255 proceedings. *See Prost v. Anderson,* 636 F.3d 578, 598 n.15 (10th Cir. 2011). Two categories of claims may be barred by this doctrine. First, a claim will be procedurally defaulted if it is the kind of claim that could have been fully addressed on direct appeal but was not raised. *See Allen*, 16 F.3d at 378. Second, claims brought on direct appeal, considered, and decided are also procedurally defaulted. Mirabal's *Giglio* claims fall in the first category, and his *Brady* claims fall in the second.

A defendant can nevertheless surmount the procedural default bar if he can show "cause" excusing his procedural default and "actual prejudice" resulting from the claimed errors. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Alternatively, a defendant can show that "a fundamental miscarriage of justice will occur if his claim is not addressed. *Id.* If the procedural default rule is raised, the defendant must have an opportunity to respond. *Id.*Mirabal's *Giglio* claim focuses on the confidential informant (also known as a confidential source and identified as CS-1 in SA Godier's affidavit). Mirabal argues that the government was required, but failed, to disclose relevant

information about CS-1, including CS-1's history, his suitability as a confidential informant, and how CS-1 was used in the government's investigation. Mirabal actively pursued discovery on this claim. *See* CR Docs. 79; 80; 109; 302; 305.[7] The government rejects these claims as "meritless and procedurally barred."

Mirabal does not respond to the government's procedural bar argument. Instead, he asserts that an evidentiary hearing is needed where he can presumably question CS-1 about information that Mirabal contends is relevant to his case. With respect to this claim, the Court finds that Mirabal fails to show cause, actual prejudice, or a miscarriage of justice.

Closely related to Mirabal's *Giglio* claim is his accusation of prosecutorial misconduct. According to Mirabal, the prosecutor knowingly elicited "perjured testimony, withheld key discovery and failed to produce key witnesses." *Doc. 20* at 23. Like his *Giglio* claims, Mirabal's prosecutorial misconduct claims do not rely on any new information. They are founded on information squarely presented to the Court in pretrial motions, at trial, and in post-trial proceedings, but not pursued on appeal. Simply put, Mirabal has not refuted that his conclusory prosecutorial misconduct claim is procedurally defaulted, and the Court should not further consider it.

In contrast, Mirabal did raise *Brady* claims which were decided in his direct appeal. Claims previously raised on direct appeal cannot be reraised in a § 2255 motion. The "'law of the case' doctrine requires every court to follow the decisions of

---

[7] Mirabal brings a similar claim before the Court in this proceeding. *See Doc. 40*. In this Discovery Request, he asks for a wide range of information he deems necessary to file an effective reply in support of his § 2255 Motion. As support, he argues "prosecutor misconduct with holding [sic] and tampering discovery" as well as "numerous violations of discovery, Brady, Jenck[s] Act and Giglio materials . . . ." *See id*. at 1.

courts that are higher in the judicial hierarchy" when there is a final judgment that decided the issue. *Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004) (quoting *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 705 (10th Cir. 1993)); *see also United States v. Trent*, 884 F.3d 985, 994-95 (10th Cir. 2018). "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (citing *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978)).

In his direct appeal, Mirabal alleged that the government wrongfully destroyed and withheld exculpatory evidence in violation of *Brady*. *See Mirabal*, 876 F.3d at 1029. The Tenth Circuit found that Mirabal had not offered any support for this claim – he neither identified evidence wrongfully withheld nor explained "how this evidence would have been pertinent" or material. *Id*. at 1039. The Tenth Circuit concluded that this claim lacked merit. Mirabal cites no new law that would support revisiting this *Brady* claim.

Mirabal also contends that the government wrongfully destroyed drug evidence. Law enforcement officers field tested the seized substances, which tested positive as crack cocaine. Later, after giving notice, the authorities destroyed the drugs. The thrust of Mirabal's argument here is that field tests are not always accurate and that law enforcement's destruction of the drug evidence prevented him from proving that the seized drugs were not crack cocaine. Mirabal made this argument in his direct appeal, but the Tenth Circuit found that he had not preserved this claim because it was not presented in the district court proceedings. *Mirabal*, 876 F.3d at 1038.

The Tenth Circuit nevertheless theorized that even if Mirabal had preserved this *Brady* claim, it would fail. To establish a violation based on destruction of potentially exculpatory evidence, a defendant must show "bad faith." *See Mirabal*, 876 F.3d at 1038 (quoting *United States v. Beckstead*, 500 F.3d 1154, 1159 (10th Cir. 2007)). Here, evidence established that the potentially exculpatory evidence had been destroyed according to "an established procedure" which "precludes a finding of bad faith absent other compelling evidence." *Id.* at 1038-39 (quoting *United States v. Gomez*, 191 F.3d 1214, 1219 (10th Cir. 1999)).  Because the Tenth Circuit considered and found that this claim had not been properly preserved and lacked merit, the law of the case doctrine also bars Mirabal's *Brady* claim.

### C. Ground Three: Alleged Ineffective Assistance of Counsel

Mirabal argues that his three attorneys – AFPD Fooks, Mr. Villa, and Mr. Baker – "failed to give Mirabal effective representation at pretrial, trial, and on appeal" and thereby "denied him a meaningful defense." *Doc. 20* at 26. For the reason set forth below, the Court should deny relief as to these claims.

Courts evaluate ineffective assistance of counsel claims under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under *Strickland*, Mirabal must show by a preponderance of the evidence both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)) (internal emphasis in original)(further citation omitted). Courts identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215,

17

1222 (10th Cir. 2005). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman,* 689 F.3d 1148, 1186 (10th Cir. 2012) (internal quotations omitted).

As to the first prong, an attorney's performance will be found deficient when it falls outside "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Indeed, a reviewing court

> must presume the counsel "to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." . . . While it may be tempting to assess a trial counsel's performance with all the benefits of hindsight, we cannot. Instead, our review of counsel's performance must be "highly deferential.". . . . "[The petitioner] must show that counsel's performance was completely unreasonable, not simply wrong."

*Meadows v Lind*, 996 F.3d 1067, 1074-75 (10th Cir. 2021) (citations omitted). Thus, the question presented on a § 2254 petition regarding a state conviction, and by extension to a § 2255 motion as to a federal conviction, "is not whether counsel's actions were reasonable" but instead "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrison v. Richter*, 562 U.S. 86, 106 (2011).

The prejudice prong is met only when a petitioner establishes that counsel's deficient performance prejudiced his defense. A lawyer prejudices his client's defense when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" is a material error that is "sufficient to undermine confidence in the outcome." *Id.*

18

### i. AFPD Devon Fooks

Mirabal contends that Mr. Fook's pretrial representation was ineffective when he:

(1) failed to challenge the physical evidence of the drugs and the field tests, or to seek

additional disclosure about the drugs; (2) failed to investigate all aspects of the stop and

search of the red Infinity on February 14, 2013; (3) failed to effectively challenge CS-1's

reliability; and (4) failed to call Deputy Young as a witness at evidentiary hearings. *Doc.*

*20* at 26.

The record rebuts Mirabal's first three claims. Mr. Fooks either actively

challenged the physical evidence or decided not to challenge the evidence because it

would not be in his client's best interests. *See* CR Doc. 102. In his affidavit, Mr. Fooks

recounts that he "researched and analyzed each piece of discovery and evidence [he]

received, and [he] conducted an in-depth investigation of [his] own into the full facts and

circumstances surrounding the charges . . . ." *Doc. 36-2* ¶ 5. Mr. Fooks explained that

although he filed motions seeking discovery about the substances recovered under the

search warrants, he decided not to challenge the results of the preliminary field tests

"because [he] did not believe that challenges to such tests were in the best interests of

defending the case." *Id.* ¶¶ 6, 7. As he relates, even if the field tests were excluded, the

actual lab results confirming crack cocaine would have been received at trial.

Contrary to Mirabal's representations, Mr. Fooks vigorously sought to suppress

evidence seized from the red Infinity, and he moved the Court to order the prosecution

to produce information about CS-1. *Doc. 99*. These motions, though ultimately

unsuccessful, were well written and thoroughly analyzed.

Finally, Mirabal alleges that Mr. Fooks was ineffective when he failed to call Deputy Young at evidentiary hearings. Mirabal does not explain, however, why Deputy Young should have been called or what he would have said. In the absence of this information, the Court cannot conclude that Mr. Fooks' decision not to call Deputy Young fell outside an objective standard of reasonableness or that it caused prejudice.

### ii. CJA Attorney Ryan Villa

Mr. Villa was assigned to Mirabal's case in response to Mirabal's *pro se* request for new counsel. Mr. Villa represented Mirabal at trial and even for a brief period on appeal. Mirabal contends that Mr. Villa: (1) failed to object to previously undisclosed evidence presented at trial; (2) failed to object to evidence about the cocaine on the basis that the drugs had been destroyed; (3) failed to object to "hearsay" testimony concerning the drugs and the involvement of allegedly unreliable CS-1; (4) failed to investigate the search of the red Infinity; (5) failed to conduct interviews with Deputy Young or CS-1; (6) failed to give him access to all of the government's discovery; (7) failed to object to the amount of drugs; (8) failed to object to the letter introduced by Dominic Anaya's lawyer about what his client told him in confidence; and (9) failed to object to the sentence he received. *Doc. 20* at 27-28. These errors, Mirabal concludes, "denied [him] the ability to present a defense[,]" because the "introduction of false evidence and testimony manipulated deliberations" and "swayed [the jury] to convict without all of the facts." *Id.* at 29.

In his affidavit, Mr. Villa avers that although many motions had been filed prior to the time he took over the case, he found additional grounds for filing a renewed motion to suppress the Title III interceptions and a motion to compel additional disclosure.

*Doc. 36-3* ¶ 5-7. Those motions (CR Docs. 263 & 302) – although thoroughly investigated, analyzed and well-written in this Court's assessment – were denied. Mr. Villa states that he is not aware of the government improperly withholding discovery or exculpatory evidence related to Mirabal. *Id.* ¶ 10.

Once again, Mirabal does not explain how Mr. Villa's performance was deficient. The denial of a motion, by itself, can neither establish that counsel's performance was deficient or establish prejudice. Claims premised on Mr. Villa's failure to call Deputy Young suffer from the same deficiencies identified in claims against Mr. Fooks relating to the deputy. *See id.* ¶ 13. Mirabal does not explain the significance of co-defendant Anaya's letter, why Mr. Villa should have objected to it, or how he was prejudiced by it. Finally, the record shows that Mr. Villa, in fact, did file objections to Mirabal's sentence and argued for a reduction. *See* CR Doc. 379.

After reviewing the record, this Court finds that Mr. Villa used his expertise and many years as a criminal defense attorney in making decisions about objections at trial, and fully involved Mirabal in the preparation of his defense. Moreover, during the trial Mirabal and Mr. Villa did not significantly disagree about how the defense should proceed. *Doc. 36-3* ¶¶ 8, 9, 11, 12. In summary, Mirabal has not established either prong of *Strickland* with respect to his claims against Mr. Villa.

### iii. Mark Baker

Mirabal contends that as a result of "lack of communication and substantial disagreements about the appeal," Mr. Baker did not pursue all of the arguments Mirabal wanted raise. *Doc. 20* at 29. Mirabal does not offer any evidence to support this argument, and it is refuted by Mr. Baker's declaration. As Mr. Baker explains, he and

Mirabal had a lengthy meeting about his appeal, then communicated telephonically and in writing. *Doc. 36-4* ¶ 7.

Generally, "[w]hen considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, [the court] look[s] to the merits of the omitted issue." *Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006). Mr. Baker states that he used his professional judgment "to select what [he] believed were the strongest available arguments to challenge [Mirabal's] convictions." *Doc. 36-4* ¶ 9. To the extent that Mirabal's claims of ineffectiveness rely on Mr. Baker's failure to brief additional issues that Mirabal deemed significant, the Tenth Circuit ordered Mr. Baker to brief the issues set forth in Mirabal's *pro se* filing, which he did. Mr. Baker drafted "a supplemental brief" using his "experience to do what he could to bolster [Mirabal's] submissions." *Id.* ¶ 11. In sum, Mirabal fails to identify any desired issues that Mr. Baker did not raise, refused to brief, or briefed inadequately. Moreover, appellate counsel is not ineffective for not raising an issue without merit. *United States v. Barrett*, 797 F.3d 1207, 1220 (10th Cir. 2015).

Mirabal's final two points of asserted error on appeal focus on Tenth Circuit rulings – denial of Mirabal's request for new counsel and not permitting Mirabal "to argue or make a showing of evidence at the oral argument at his appeal hearing." *See Doc. 20* at 29.  The Court has no jurisdiction over Mirabal's latter two arguments, as it cannot offer relief with respect to alleged errors by a higher Court.

**D. Ground Four: Other Alleged Errors**

**i. Predicate offense characterization as a crime of violence**

Mirabal first challenges his conviction on Count 6 for Possession of Body Armor by a Felon Who has been Convicted of a Crime of Violence in violation of 18 U.S.C.

§§ 931(a)(1) and 924(a)(7). To be guilty of this offense, the defendant must have a prior conviction for "an offense under State law that would constitute a crime of violence." *See* 18 U.S.C. § 931(2). Mirabal maintains that his past conviction for aggravated battery with a deadly weapon in violation of N.M. Stat. Ann. § 30-3-5(C) cannot meet this definition of a crime of violence. Therefore, Mirabal argues, it cannot serve as the predicate prior felony needed to support a federal body armor possession conviction. [8]

The federal criminal code defines a "crime of violence" as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The two parts of this applicable definition are known as the "elements clause" in § 16(a) and "residual clause" in § 16(b).

Prior to trial, the Court asked for briefing on two issues: (1) whether the New Mexico crime of aggravated battery with a deadly weapon constitutes a crime of violence, and (2) whether such a finding is a legal decision for the Court to decide as a matter of law or a question for the jury. CR Docs. 308; 320.

In his decision, Chief Judge Johnson "conclude[d] that a determination of whether a predicate or prior conviction is a felony 'crime of violence' is a legal question for the

---

[8] The government does not maintain that this argument is procedurally barred. At the time the Court sentenced Mirabal, the Supreme Court had not yet issued its 2018 decision in *Sessions v. Dimaya,* 138 S. Ct. 1204 (2018), in which it found the residual clause in 18 U.S.C. § 16(b) to be unconstitutionally vague. *See United States v. Snyder,* 871 F.3d 1122, 1127-28 (10th Cir. 2017) (a decision announcing a "new constitutional principle" excuses a defendant's failure to raise the issue because it was not reasonably available). Here, Mirabal's prior felony convictions arguably were found to fall within the now-unusable residual clause definition of violent crimes so any arguments implicating the elements clause definition would have likely been unavailing.

Court to decide, and not the jury." CR Doc. 331 at 12. With this proposition, this Court

agrees. Indeed, as the Honorable James O. Browning explained in the context of 18

U.S.C. § 924(c), the

> definition of a "crime of violence" is a question of law. "The answer requires
> examination of the legal elements of the crime, not an exploration of the
> underlying facts." Because whether a crime is a crime of violence is "a
> matter of law," a district court need not submit and should not submit the
> question to the jury.

*United States v. Folse*, No. CR 15-2485 JB, 2019 WL 826965, at *14 (D.N.M. Feb. 21,

2019) (citations and internal citations omitted).

The second question – whether the predicate crime in this case qualifies as a

crime of violence – poses greater concern for this Court. And for the reasons that follow,

I will appoint counsel to represent Mirabal to explore this purely legal point and will order

supplemental briefing on this issue.

In his trial briefing, Mirabal argued that the residual clause of § 16(b) was

unconstitutionally vague and therefore could not be used to define a crime of violence.

He relied on *Johnson v. United States,* 576 U.S. 591 (2015). The *Johnson* Court

examined whether a prior conviction for unlawful possession of a short-barreled shotgun

met the definition of a violent felony under the residual clause of the Armed Career

Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). The Supreme Court observed that the

"categorical approach" was used when determining whether an offense qualifies as a

violent felony: "a court assesses whether a crime qualifies as a violent felony 'in terms of

how the law defines the offense and not in terms of how an individual offender might

have committed it on a particular occasion.'" *Id.* at 596 (citation omitted). The ACCA's

residual clause was found to violate due process "because, unlike the part of the

definition of a violent felony that asks whether the crime 'has as an element the use . . . of physical force,' the residual clause asks whether the crime 'involves conduct' that presents too much risk of physical injury." *Id.* This interjected "grave uncertainty about how to estimate the risk posed by a crime" because it "tie[d] the judicial assessment of risk" to a hypothesis about the crime's "ordinary case" such that the residual clause of the ACCA was found to be unconstitutional. *Id*.

Here, Chief Judge Johnson distinguished the ACCA's "residual clause" from the residual clause in § 16(b) and specifically noted differences in those statutory provisions. CR Doc. 331 at 4 ("unlike the ACCA provision, §16(b) contains no confusing list of enumerated offenses . . . ."). He then determined that the *Johnson* rationale did not apply to 18 U.S.C. §16(b) and rejected the argument that §16(b) is unconstitutionally vague. *Id.* Contrary to Chief Judge Johnson's prediction, however, the Supreme Court subsequently held the §16(b) residual clause to be unconstitutionally vague. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018). Thus, to the extent that Judge Johnson relied on § 16(b) in finding aggravated battery with a deadly weapon in violation of N.M. Stat. Ann. § 30-3-5(C) to be a crime of violence, that determination cannot stand.

Only the definition of a crime of violence under § 16(a)'s "elements clause" could now be available for finding Mirabal's prior felony conviction to be one for a crime of violence. This "elements clause" defines a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). "Federal law defines the meaning of the phrase 'use, attempted use, or threatened use of physical force'" while "state law

defines the substantive elements of the crime of conviction." *United States v. Harris*, 844

F.3d 1260, 1264 (10th Cir. 2017) (examining the identical elements clause of the ACCA).

Looking first to the substantive elements of aggravated battery, the relevant New

Mexico statute provides in full:

> A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.
>
> B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.
>
> C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. Stat. § 30-3-5. Chief Judge Johnson focused on the element of "intent to injure" in

conjunction with the use of a deadly weapon for his finding that Mirabal's prior felony

conviction under this statute was one for a crime of violence. But, as explained earlier, it

appears he did so solely within the context of the unconstitutionally vague residual

clause of § 16(b).

The Tenth Circuit has not published an opinion addressing whether the New

Mexico crime of aggravated battery with a deadly weapon constitutes a crime of

violence. But recently, in an unpublished opinion, it explored this issue in the context of

USSG 4B1.2(a), the elements clause of the career offender enhancement in the United

States Sentencing Guidelines. *United States v. Folse*, 854 F. App 'x 276 (10th Cir.

2021), *cert. denied*, 142 S. Ct. 631 (2021). In *Folse*, the appellant argued that his

conviction under N.M. Stat. Ann. § 30-3-5 did not fall USSG §4B1.2(a)'s definition of

"crime of violence." *Id*. at 290. The "elements clause" of USSG 4B1.2(a) is identical to

the one set forth in § 16(a) – requiring that a "crime of violence" have as "an element the use, attempted use, or threatened use of physical force against the person of another." *See id.*.

The appellant's argument in *Folse* "center[ed] on the 'physical force' component of the elements clause." *Id*. at 291. The meaning of the "physical force" component of the elements clause was discussed in *Johnson. See* 559 U.S.  at 140 (physical force "means violent force – that is, force capable of causing physical pain or injury to another person."). In *Folse*, the Tenth Circuit panel found that where the conviction was one under N.M. Stat. Ann. § 30-3-5(C), the minimal conduct needed for conviction under § 30-3-5(A) – unlawful touching – was not determinative as to the "crime of violence" inquiry. Rather, the categorical approach for a conviction under § 30-3-5(C), "should center on the acts delineated in subsection (C)." *Id*. at 292-93. The Tenth Circuit rejected

> Mr. Folse's argument that, under the categorical approach, the elements of his aggravated battery conviction do not require the requisite physical (i.e., violent) force to satisfy the elements clause. Given that his focus in discerning the least acts criminalized was on subsection (A), Mr. Folse spills virtually no ink on affirmatively arguing about which of the acts proscribed in subsection (C) constitutes the least act criminalized and whether those acts meet the *Johnson* test for physical force.

*Id*. at 294. The court went no farther in its analysis, however, because "absent a meaningful argument from Mr. Folse concerning which of the acts proscribed in subsection (C) constitutes the least act criminalized and whether those acts meet the *Johnson* test for physical force, we deem the matter waived." *Id.*.

The present case lacks adequate briefing as to the issues surrounding the use of the elements clause, including its potential application in a categorical or modified-categorical approach. Especially given that this inquiry underpins the validity of the

conviction on the felon in possession of body armor charge in Count 6, not just a sentencing enhancement, the Court will appoint CJA counsel for Mirabal for briefing and for potential oral argument *on this claim only*. The Court notes that a very recent Tenth Circuit case reviews in detail the procedure for examining whether a prior felony constitutes a crime of violence and should provide needed guidance to the briefing attorneys and to the Court: *United States v. Wilkins*, No. 19-5114 (10th Cir. April 15, 2022).

### ii. Sentencing Enhancements

Mirabal's next claims target alleged errors in his sentencing: (1) application of the career offender enhancement; (2) a two-point enhancement for felon in possession of a firearm in furtherance of a crime; and (3) inaccurate calculations under the guidelines of the quantity of cocaine involved in his offense. *Doc. 20* at 31.

The government argues that these arguments are procedurally defaulted. Indeed,

> [w]hen a defendant fails to raise an issue on direct appeal, he is barred "from raising it in a § 2255 motion 'unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.'" "This procedural bar . . . applies to a defendant's collateral attack on his sentence, just as it does to an attack on his conviction. The fundamental miscarriage of justice exception to procedural default is "a markedly narrow one, implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"

*United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (quotations and citation omitted). Here, Mirabal presented none of these sentencing arguments in his direct appeal. Nor does he show that these claims fit within any of the exceptions excusing procedural default. Thus, these claims are procedurally defaulted as is

Mirabal's recently filed  "Motion Challanging [sic] Conspiracy and Sentence and Charging Disparitys [sic]." *See Doc. 63*.

### iii. Applicability of the First Step Act of 2018 ("FSA")

Mirabal's final claim is that the Court should have considered FSA when fashioning his sentence. Until 2010, significant sentencing disparity existed between those sentenced for possession of crack cocaine and those sentenced for powder cocaine as "every gram of crack cocaine [was treated] as the equivalent of 100 grams of powder cocaine." *Kimbrough v. United State*s, 552 U.S. 85, 96 (2007). In 2010, the Fair Sentencing Act corrected those discrepancies in sentencing. *See* 124 Stat. 2372 § 2(a), (2010) (codified in 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii)); *see also Dorsey v. United States*, 567 U.S. 260, 269 (2012) (discussing purpose and effect of Fair Sentencing Act). In 2018, the FSA made those changes retroactive. FSA, Pub. L. No. 115-319, 132 Stat. 5194, § 404 (Dec. 21, 2018).

To be eligible for sentence modification under the Fair Sentencing Act as made retroactive by the FSA, a defendant needs to establish three elements: (1) he was convicted for violating a federal criminal statute modified by section 2 or 3 of the Fair Sentencing Act; (2) he committed the qualifying offense before August 3, 2010; and (3) a court has previously not modified or considered his sentence on the merits under the Fair Sentencing Act. *See* FSA § 404(a)-(c). Simply put, when the Court sentenced Mirabal on June 9, 2016, the Fair Sentencing Act applied to his case. Thus, Mirabal already received the relief the FSA seeks to retroactively provide.

**E. Ground Five: Alleged Perjury**

Mirabal contends that the government violated his constitutional rights when it permitted co-defendant Dominic Anaya to testify falsely at Mirabal's trial. The alleged false testimony pertained to how Anaya financed the vehicle Mirabal used throughout the conspiracy. Mirabal contends that Anaya fabricated check stubs to support his false testimony that the vehicle was financed with unemployment checks. *Doc. 20* at 33. The Court finds the government's response persuasive:

> Mirabal does not allege, let alone describe with particularity, any documentary evidence that would support his claim, and even if such material existed, it would hardly be material, given the ample evidence already introduced to impugn Anaya's reliability as a witness. Moreover, the subject of Anaya's financing of his own vehicle is so collateral to the actual charges in the case, that it is highly unlike that any such cross examination on this subject at trial would have survived a relevance objection.

*Doc. 36* at 37. The Court finds that relief should be denied on this claim.

On appeal to the Tenth Circuit, Mirabal alleged that Chief Judge Johnson wrongfully prohibited him from thoroughly cross-examining Mr. Anaya. At trial, the Court permitted Mirabal to question Mr. Anaya about his plea agreement and about Mr. Anaya's expectation of a lighter sentence based on his cooperation. But the Court did not permit Mirabal to inquire in detail as to the difference between the sentence Mr. Anaya could have received, and the sentence Mr. Anaya hoped to receive. The Court disallowed that line of questioning, reasoning that it was speculative and could prompt the jury to improperly consider the length of Mirabal's potential sentence.

In considering Mirabal's argument, the Tenth Circuit assumed that the Court's restriction on Mirabal's examination of Mr. Anaya violated the Confrontation Clause and so examined the violation under the harmless error standard. The harmless error

standard requires the government to show "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Mirabal,* 876 F.3d at 1035. Accordingly, the Tenth Circuit examined and weighed the following factors: (1) the importance of Mr. Anaya's testimony, (2) whether Mr. Anaya's testimony was cumulative, (3) whether Mr. Anaya's testimony had been corroborated, (4) the extent of the permitted cross-examination, and (5) the overall strength of the case. *Id.* at 1035. The Court found beyond a reasonable doubt that "based on the strength of the prosecution's case and [Mirabal's] extensive cross-examination of Mr. Anaya," the jury would still have returned a guilty verdict. *Id.* at 1037.

Although the Tenth Circuit did not analyze the perjury claim in the way Mirabal frames it here, it appears that Mirabal did raise this argument in the supplementary briefing filed with the Tenth Circuit. *Id..* at 1037 n.3. The Tenth Circuit declined to further consider that argument, finding that the issues were "either undeveloped or included within issues already discussed." *Id.*

Because Mirabal's claims regarding Mr. Anaya's testimony were brought before the Tenth Circuit, they are procedurally barred by the law of the case doctrine and the Court cannot consider them further.

## V. ORDER  AND RECOMMENDATIONS

**IT IS HEREBY ORDERED** that this Court reserves its recommendation as to Mirabal's Ground Four claim that he was improperly convicted of Possession of Body Armor by a Felon Who has been Convicted of a Crime of Violence in violation of 18 U.S.C. §§ 931(a)(1) and 924(a)(7). The Clerk shall appoint CJA counsel for Mirabal for briefing and for potential oral argument as to whether Mirabal's conviction for

aggravated battery with a deadly weapon constitutes a crime of violence. The Court will hold a status conference with the attorneys to establish a briefing schedule on this solely legal issue.

**IT IS HEREBY RECOMMENDED** that Mirabal's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed April 8, 2020 (*Doc. 20*), be denied as to Grounds One, Two, Three, and Five, as addressed above.

**IT IS FURTHER RECOMMENDED** that Mirabal's § 2255 Motion be denied as to Ground Four but only to the extent Mirabal alleges improper sentencing enhancements and failure to apply the First Step Act of 2018.

**IT IS FINALLY RECOMMENDED** that Mirabal's Motion to Appoint New Counsel (*Doc. 21*); Motion for Discovery (*Doc. 40*); Motion for Evidentiary Hearing (*Doc. 42*); Combined Motion for Discovery and Hearing (*Doc. 51*); Second Motion for an Evidentiary Hearing (*Doc. 62*); and Motion Challenging Conspiracy and Sentence and Charging Disparities (*Doc. 63*) be denied.


_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**